620 So.2d 219 (1993)
J. WALTERS CONSTRUCTION, INC. and Continental Casualty Company, Appellants,
v.
GILMAN PAPER COMPANY, a corporation, Appellee.
No. 92-1497.
District Court of Appeal of Florida, First District.
June 15, 1993.
Rehearing Denied July 15, 1993.
*220 Jack W. Shaw, Jr. and Michael J. DeCandio, Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, Jacksonville, for appellants.
Frank W. Hession and Robert B. Guild, Matthews & Hession, Jacksonville, for appellee.
SMITH, Judge.
Appellants seek reversal of a final judgment by which Continental Casualty Company (CNA) was found to be liable as insurer on a claim arising out of an accident at appellee's Georgia place of business. We affirm.
J. Walters Construction, Inc. (Walters), contracted with the appellee, Gilman Paper Company (Gilman), to perform construction work at a Gilman plant in St. Mary's, Georgia. During the course of the construction work one of Walters' employees, Lewis McCormick, was seriously injured, and the employee filed suit against Gilman, alleging negligence. The suit was eventually settled by Gilman's payment of a substantial sum to McCormick. However, prior to the settlement, Gilman was granted leave to file a third party complaint against Walters and its insurer, CNA. Later, the count against CNA by which Gilman sought a declaratory judgment was voluntarily dismissed. However, the claim made against Walters, for contractual indemnification, was heard and determined by the court, sitting without a jury.
The essence of Gilman's third party suit was that the contract between Walters and Gilman provided that Walters was to secure insurance coverage, with Gilman as a named insured, for all losses arising out of the contracted work, and that Walters had agreed to hold Gilman harmless for any loss arising out of the contracted work. It is undisputed that coverage by CNA had been obtained pursuant to the agreement which fully covered the claim made by McCormick. Thus, Gilman alleged, because the parties intended any loss to be covered by the CNA policy, and because the CNA policy does in fact cover the claim made against Gilman by the injured employee, CNA should be required to reimburse Gilman for the costs of settlement and the settlement amount. The trial court, relying on McAbee Construction Co. v. Georgia Kraft Co., 178 Ga. App. 496, 343 S.E.2d 513 (Ga. App. 1986), ruled in favor of Gilman.
The parties have agreed that Georgia law is controlling. On appeal, Walters and CNA argue that while the CNA policy does afford coverage for the claim at issue, and while the parties may have intended the CNA policy to cover any claim arising from the contracted work, CNA is nevertheless responsible for only half of the settlement amount because Gilman had its own insurance coverage, under a policy written by Liberty Mutual, which also covered the McCormick claim. Walters and CNA urge that both insurers must share equally in the loss because of provisions contained in both policies to the effect that if other coverage is available, then coverage *221 for only half of the claim will be provided.[1]
We agree with Gilman that to apply the "other insurance" provisions to reduce CNA's liability would serve to abrogate the indemnity agreement between Walters and Gilman, and that there is no authority for such a result under Georgia law. As explained by the court in McAbee, supra, quoting from Tuxedo Plumbing & Heating Co., Inc. v. Lie-Nielsen, 245 Ga. 27, 28-29, 262 S.E.2d 794 (Ga. 1980), an insurance agreement, such as the one in this case, "must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party." 343 S.E.2d at 515. Further, said the court: "Exculpation is not indemnification, nor is it an agreement to hold the other harmless. It goes beyond accepting liability for the injury to accepting an obligation to secure another's contracted-for liability for the injury." Id. at 515 (emphasis added). See also, Terrace Shopping Center Joint Venture v. Oxford Group, Inc., 192 Ga. App. 346, 384 S.E.2d 679 (Ga. App. 1989).
Applying the holding of these cases to the one before us, only one insurer, CNA, has provided insurance protection to cover Walter's "contracted-for liability"; thus, there is no occasion to look to insurance coverage Gilman might have obtained independent of its agreement with Walters. As stated by the McAbee court, the insurance agreement "shifts the risk of loss to the insurance company [in this case CNA] regardless of which party is at fault." McAbee, 343 S.E.2d at 515. It follows that just as there is no occasion to determine Gilman's fault in the present case, there is no occasion to implicate any insurance it might have obtained for its protection in event of such fault.
We note that the arguments advanced on appeal do not appear to correspond in all respects with those made below.[2] Nevertheless, from our review of the briefs and the arguments as framed on appeal, we conclude that the lower court did not err when it determined that the parties' agreement, i.e., that Walters would hold Gilman harmless and that Walters would secure insurance, was evidence of their mutual intent to have any claim arising out of the contracted work paid exclusively by the insurance secured by Walters, without contribution by Gilman's insurer, Liberty Mutual.
Finally, we note that appellants have argued that the lower court erred in reserving jurisdiction to award to Gilman the attorney fees and costs incurred by it in the suit brought by the injured employee. Because there is no final ruling in the record before us on Gilman's actual entitlement to reimbursement of fees and costs or on the amount of fees and costs to be *222 awarded, we find this issue is not yet ripe for appellate review.
Accordingly, the final judgment is AFFIRMED.
BOOTH and MINER, JJ., concur.
NOTES
[1] The CNA policy's "other insurance" clause provided in pertinent part:

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limits of insurance or none of the loss remains, whichever comes first.
If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.
[2] At the trial court level, Walters and CNA conceded that Walters had agreed to indemnify Gilman, but they argued that because Gilman's negligence was the sole, or at least, a contributory cause of the employee's injury, indemnification was not appropriate. On appeal, Walters and CNA present an argument that owing to the somewhat peculiar placement of the insurance indemnification agreement in the contract of the parties, there was in fact no "indemnity agreement," as such, between the parties. We find no merit in this argument. The contract clearly and unmistakably requires the coverage provided by CNA, and the certificate of insurance contained the following statement:

Includes Contractual Liability Coverage for Hold-Harmless Agreement Contract  Contractor agrees to indemnify and hold harmless Gilman Paper Company from any and all loss, damage, claims or demands of whatever nature, on account of injury or death of any person, (including the contractor's personnel) or damage or loss of property arising out of contractor's work covered by this purchase order. Gilman Paper Company is an additional insured for contracts performed by the Named Insured.