NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3724-14T4

DOMINIC ANDALORA and ELLA
ANDALORA,

     Plaintiffs,

v.

R.D. MECHANICAL CORP., COMMERCE
BANK, COMMERCE BANCORP, INC.,

     Defendants,

and

ICS BUILDERS, INC.,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

SWIFT CONSTRUCTION, LLC,

     Third-Party Defendant-
     Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 10, 2017**
>
> **APPELLATE DIVISION**

Argued October 11, 2016 – Decided  January 10, 2017

Before Judges Reisner, Koblitz[1] and Rothstadt.

---

[1] With the parties' consent, Judge Koblitz participated in the court's decision, without the need for further oral argument. R. 2:13-2(b).

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1432-08.

Joseph D'Ambrosio argued the cause for appellant (Ford Marrin Esposito Witmeyer & Gleser, L.L.P., attorneys; Mr. D'Ambrosio and Alfred L. D'Isernia, on the brief).

Susan A. Lawless argued the cause for respondent (Purcell, Mulcahy, Hawkins, Flanagan & Lawless, LLC, attorneys; Ms. Lawless and Alyssa K. Weinstein, on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

ICS Builders, Inc. (ICS) appeals from a March 20, 2015 order dismissing its third-party complaint against Swift Construction, LLC (Swift). In brief summary, after the underlying personal injury lawsuit, which sparked this insurance coverage litigation, was settled, ICS's insurer retained subrogation rights against ICS's subcontractor. The insurer's right to assert the subrogation claim did not turn on whether ICS suffered any actual damages by virtue of the subcontractor's alleged breach of an indemnification clause in the construction contract. ICS had no damages because its insurer paid ICS's alleged share of the settlement. Procedurally, the insurer should then have asserted its subrogation claim in its own name as the real party in interest, but it was error for the trial court to dismiss ICS's lawsuit

2                                                    A-3724-14T4

against the subcontractor with prejudice. Since the insurer has now filed a separate subrogation lawsuit in its own name, we modify the March 20, 2015 order to provide for a dismissal of ICS's lawsuit without prejudice.

I

This appeal arises from a 2006 construction accident. ICS was the general contractor on the construction project. Its subcontractors, R.D. Mechanical Corporation (R.D. Mechanical) and Swift, each signed a contract containing an agreement to indemnify ICS for losses arising from the subcontractor's work. The relevant clause provided:

> The Sub-Contractor shall indemnify and hold ICS harmless from all liability, loss, cost or damage, including attorneys' fees from claims for injuries to persons or property damage or death from any cause, while on or near the project, of its employees or the employees of its Sub-contractor . . . from any cause occasioned in whole or in part by any act or omission of the Sub-Contractor, its representatives, employees, subcontractors or suppliers, and whether or not it is contended ICS contributed thereto in whole or in part, or was responsible therefor by reason of non-delegable duty . . . .

The clause provided that it was to be construed as broadly as permitted under the "applicable law." In New Jersey, the outer limit of such an indemnification clause is set by N.J.S.A. 2A:40A-1, which prohibits indemnification of a party for its sole

negligence. Thus ICS could not be entitled to indemnification if an accident was due to ICS's sole negligence.

Mt. Hawley Insurance Company (Mt. Hawley) was ICS's primary insurer. However, in accordance with the contracts with Swift and R.D. Mechanical, ICS was also named as an additional insured on each subcontractor's insurance policy. Swift was insured by The Hartford Insurance Company of the Midwest (Hartford), and R.D. Mechanical was insured by Liberty Mutual Insurance Company (Liberty Mutual).

One of Swift's employees, Dominic Andalora, fell off a scaffold and was severely injured. Due to the statutory workers' compensation bar, N.J.S.A. 34:15-8, Andalora could not sue his employer, Swift. However, he sued ICS and R.D Mechanical. ICS filed a third-party action against Swift, to enforce ICS's contractual right to have Swift (and, by extension, its insurer, Hartford) defend and indemnify ICS.

Additionally, in two separate actions, Hartford sued Mt. Hawley (L-9317-10), and ICS sued R.D.'s insurer, Liberty Mutual (L-9585-10), asking the court to determine the responsibility of the various insurers for providing ICS with coverage in the Andalora litigation. Those two coverage actions were consolidated. The issue in those cases were whether all three insurers were obligated to provide primary coverage to ICS, or

whether some of the coverage was only excess. In a September 30, 2011 opinion, memorialized in an October 4, 2011 order, the court held that all three insurers provided primary coverage and all three were "each one third liable to defend and indemnify ICS." However, as discussed later, a subsequent opinion issued by the same judge clarified that ruling.[2]

Andalora's personal injury lawsuit was settled for $5 million, with Swift's insurer (Hartford) contributing $3 million and R.D.'s insurer (Liberty) paying $2 million. The settlement of the underlying personal injury suit was placed on the record on October 1, 2012. At that hearing, all of the insurers were represented by counsel. Although ICS's attorney expressed some concern over the implications for his client's third-party action against Swift, none of the insurers, including ICS, argued that the Andalora case should not be settled.

At the settlement hearing, R.D. Mechanical's insurer, Liberty Mutual, made it clear that it was not "fronting" its $2 million settlement contribution, i.e., it was not paying the money subject to later litigation with the other insurers over R.D.'s responsibility for the accident. It was paying the $2 million

---

[2] The October 4, 2011 order was interlocutory because the judge reserved for further decision an issue, unrelated to this appeal, concerning Liberty Mutual's obligations.

without recourse. However, Hartford's attorney represented that Hartford was "fronting" $3 million toward the settlement. It plainly appears from the transcript that ICS, Swift, and their insurers understood that there was going to be continuing litigation over which insurer (Hartford or Mt. Hawley) would ultimately be responsible to pay the money.

In the separate coverage litigation, Hartford then filed a motion to require Mt. Hawley to put up $1 million as its share of the "fronting" money, and the court granted that motion on October 26, 2012. However, there was no expectation that Mt. Hawley was going to wind up on the hook to pay $1 million toward the settlement without first having its day in court on whether its insured was liable for the accident. If ICS was not solely liable for the accident, then it was entitled to indemnification from its subcontractor, Swift, and Hartford would be required to pay the entire settlement.[3]

The judge's October 26, 2012 opinion makes it quite clear that the judge did not enter a final, appealable order requiring Mt. Hawley to pay Hartford the money, without recourse in future

_____

[3] In their original filings on this appeal, neither party provided us with the Law Division judge's statements of reasons for either of his orders requiring Mt. Hawley to pay the $1 million. We directed the parties to provide us with those opinions, which were issued on September 30, 2011 and October 26, 2012.

litigation. Rather, because ICS was entitled to coverage from both insurers, the judge required Mt. Hawley to put up a share of the settlement money, pending the outcome of the ICS-Swift litigation. Acknowledging that Hartford had paid $3 million to settle Andalora's claims against ICS, the judge found equitable reasons to require Mt. Hawley to join in the "fronting" arrangement, but also acknowledged that this arrangement was not the final determination as to which insurer ultimately would have to bear the settlement costs:

> The court does not agree with Mt. Hawley that the Hartford's demand is an attempt to 'abrogate' its settlement. . . . It does agree with Mt. Hawley that the Hartford's demand is arguably 'premature', but there are equitable considerations both ways on that issue. Obviously, either the Hartford or Mt. Hawley could be paying too much, too soon at this time (depending on the final result of the case). In that situation, the court concludes that forcing the Hartford to pay 100% of the amount at issue up front when the Hartford helped all defendants by settling, would be unfair.

Mt. Hawley paid Hartford the $1 million but its insured, ICS, delayed in pursuing the third-party action against Swift. Eventually, ICS asked the Law Division judge to schedule a trial of its third-party indemnification action against Swift, and the judge scheduled the trial. A couple of months before the trial date, Swift moved for summary judgment on the theory that ICS had

no damages because Swift's insured, Hartford, had provided ICS with a defense in the personal injury suit, and both Hartford and ICS's insurer, Mt. Hawley, had paid to settle that lawsuit. ICS had paid nothing. The Law Division judge agreed and granted the motion in a March 20, 2015 order.

A week later, on March 27, 2015, Mt. Hawley, acting as subrogee to ICS's indemnification claims, filed a federal lawsuit against Swift, seeking to recoup the $1 million which Mt. Hawley was ordered to contribute to the personal injury settlement, plus additional legal costs incurred.

II

We review the Law Division's legal conclusions, and its interpretations of the pertinent insurance contracts, de novo. Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004). As appears from the discussion in part I of this opinion, the real dispute in this case is between Mt. Hawley and Hartford, over their respective obligations to contribute to the settlement of the Andalora lawsuit. As previously discussed, Hartford agreed to "front" the sum of $3 million toward the settlement. However, it then sought a contribution from Mt. Hawley. For reasons he characterized as "equitable," the Law Division judge ordered Mt. Hawley to pay Hartford $1 million toward the "fronting" of the settlement amount, pending the outcome of

ICS's third-party action against Swift for indemnification. However, the same Law Division judge then dismissed ICS's lawsuit against Swift <u>with</u> <u>prejudice</u>, on the theory that ICS had incurred no damages. We conclude that the Law Division judge's with-prejudice dismissal elevated form over substance and constituted a miscarriage of justice.

It is correct that ICS incurred no damages, but Mt. Hawley incurred a $1 million expense on ICS's behalf.[4] We conclude that, once Mt. Hawley paid the $1 million toward the Andalora settlement, ICS's indemnification claim should have been pursued by Mt. Hawley as subrogee. Mt. Hawley's rights in pursuing that claim would be controlled by the terms of the indemnification clause in the contract between ICS and Swift.

As ICS's insurer, Mt. Hawley is subrogated to ICS's right to claim indemnification from Swift for damages Mt. Hawley paid to settle the Andalora case.

> Subrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it. It is a right of ancient origin, having been imported from the civil law to serve the interests of essential justice between the parties. It is most often brought into play when an insurer who has indemnified an insured

---

[4] ICS's arguments concerning its alleged unliquidated damages are not supported by the record. In the trial court, ICS produced no legally competent evidence concerning the impact of Andalora's claim on its future insurance rating and premiums.

for damage or loss is subrogated to any rights that the insured may have against a third party, who is also liable for the damage or loss. In such a case it is only equitable and just that the insurer should be reimbursed for his payment to the insured, because otherwise either the insured would be unjustly enriched by virtue of a recovery from both the insurer and the third party, or in the absence of such double recovery by the insured the third party would go free despite the fact that he has the legal obligation in connection with the loss or damage.

[Standard Acc. Ins. Co. v. Pellecchia, 15 N.J. 162, 171 (1954) (citations omitted).]

Mt. Hawley has the right to assert its subrogation claim with or without ICS's consent.

The right does not arise out of contract but rather exists without the consent of the insured, although of course the parties may by agreement waive or limit the right. The subrogee in effect steps into the shoes of the insured and can recover only if the insured likewise could have recovered.

[Id. at 172 (citations omitted).]

In a subrogation claim based on contract, "[t]he insurer steps into the shoes of the insured and can through subrogation enforce the contractual obligation of the third party." Id. at 182. In this case, Mt. Hawley has the right to step into the "shoes" of ICS, in order to enforce ICS's contractual right to indemnification from Swift. The indemnification clause required Swift to indemnify ICS against any damage claim filed against ICS

10

by a Swift employee working on the project, and by its terms the clause was to be construed as broadly as allowed by law. The scope of the clause is not at issue on this appeal, however, under New Jersey law, indemnification cannot be required if ICS was solely negligent for Andalora's injuries. See N.J.S.A. 2A:40A-1.

Therefore, at a minimum, determining ICS's right to indemnification, and Mt. Hawley's corresponding subrogation rights against Swift, would require a determination of liability for Andalora's accident. That determination would be required regardless of the settlement of the Andalora lawsuit. The only issue is a procedural one - whether ICS should pursue the lawsuit in its own name, or whether Mt. Hawley should pursue it.

In pursuing the lawsuit, ICS clearly acted as a surrogate for its insurer, which at this point is the real party in interest and is seeking reimbursement from Swift for Mt. Hawley's $1 million contribution to the Andalora settlement. Peeling the legal onion further, the real parties in interest in this case are Mt. Hawley, which solely insured ICS, and Hartford, which insured Swift as its primary insured and ICS as an additional insured. If Swift is required to indemnify ICS/Mt. Hawley for the $1 million, Hartford will pay the judgment.

Ironically, these same two insurers have had this dispute before. Toward the end of its brief, Mt. Hawley cites a case very

similar to this one, in which Mt. Hawley and Hartford litigated the issue of which of them was ultimately responsible for paying the settlement of a personal injury lawsuit. Mt. Hawley won that case, and Hartford's attempt to distinguish the case here is unpersuasive.

We quote the court's description of the case in full:

> Pursuant to a construction contract, a subcontractor agreed to indemnify the general contractor for claims and liabilities arising out of the subcontractor's performance and to obtain a commercial general liability (CGL) policy listing the subcontractor as the named insured and the general contractor as an additional insured. The general contractor also had its own separate CGL policy, designating it as the named insured.
>
> While the construction was in progress, an employee of the subcontractor was injured and filed suit against the general contractor. The subcontractor's insurer provided a defense and settled the case, using its own funds.
>
> The subcontractor's insurer then filed this action against the general contractor's own insurer, seeking payment of one-half of the defense and settlement expenses. The general contractor's own insurer asserted it was not liable for contribution because, under the indemnity provision in the construction contract, the general contractor was not liable to the subcontractor in any amount. On cross-motions for summary judgment, the trial court agreed with the subcontractor's insurer and entered judgment against the general contractor's own insurer.
>
> We conclude that, just as the general contractor is not liable to the subcontractor

12

under the indemnity provision, so the general contractor's own insurer is not liable to the subcontractor's insurer. To hold otherwise would negate the indemnity provision in the construction contract. We therefore reverse.

[Hartford Cas. Ins. Co. v. Mt. Hawley Ins. Co., 123 Cal. App. 4th 278, 281-82 (Cal. Ct. App 2004).

In reaching that conclusion the court noted that "[w]here, as here, the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity."[5]  We find that reasoning persuasive.

In the contract with Swift, ICS contracted for protection against the litigation expense and possible damages associated with lawsuits that might be filed against ICS by Swift's employees. Because New Jersey law precludes indemnification for a party's sole negligence, the agreement meant that Swift's insurer (Hartford), rather than ICS's insurer (Mt. Hawley), would bear the full cost of such litigation and any damages awarded, unless ICS turned out to be solely liable for the Swift employee's injuries. Precluding both ICS and Mt. Hawley (as subrogee) from enforcing

---

[5] The doctrine of equitable indemnity governs the obligations of multiple insurers that all insure the same entity against the same risk during the same coverage period.  Id. at 290.

the agreement would strip ICS of the benefit of its bargain with Swift.

Likewise, requiring Mt. Hawley to reimburse Hartford $1 million, without further recourse, _after_ Hartford unilaterally paid the Andalora settlement, would unfairly deny Mt. Hawley the right to litigate the underlying issue of its insured's (and hence, Mt. Hawley's) legal liability to pay anything toward the settlement.[6] As a matter of judicial efficiency, once the Andalora case was settled, Hartford's reimbursement claim against Mt. Hawley should have been consolidated with ICS's lawsuit against Swift, so that the issue as to which insurer should ultimately pay the settlement could have been decided in one lawsuit. However, it was not; instead the Law Division judge issued what amounted to a provisional ruling requiring Mt. Hawley to advance Hartford $1 million, subject to the outcome of the ICS-Swift lawsuit.

Further, as a procedural matter, once Mt. Hawley actually paid Hartford the $1 million portion of the settlement, Mt. Hawley became the real party in interest in the ICS-Swift litigation, and should have substituted in as plaintiff and promptly pursued its

---

[6] Hartford's reliance on Estate of Spencer v. Gavin, 400 N.J. Super. 220, 256 (App. Div.), certif. denied, 196 N.J. 346 (2008), and similar cases concerning settling defendants, is misplaced; those cases do not concern parties having an underlying contract requiring one party to defend and indemnify the other.

claim. R. 4:26-1. That did not happen, either. However, after the ICS lawsuit was dismissed, Mt. Hawley filed its own lawsuit against Swift in federal court. We conclude that the interests of judicial efficiency are best served by allowing Mt. Hawley to pursue that lawsuit to conclusion, rather than by allowing ICS to re-open this case in its capacity as a stand-in for Mt. Hawley.[7] That conclusion requires that the order in this case be entered without prejudice, and we remand for the limited purpose of entering an amended order.

Nothing in our opinion would preclude Mt. Hawley and Hartford, the two insurers whose financial interests are at issue here, from agreeing to both litigate the issue directly as parties. See e.g., Fed. Ins. Co. v. Gulf Ins. Co., 162 S.W.3d 160, 162 (Mo. Ct. App. 2005) (suit between insurers over contribution to a personal injury settlement); Hartford v. Mt. Hawley, supra. Nor would our opinion preclude the two insurers from agreeing to binding arbitration of their dispute over whether Mt. Hawley is entitled

---

[7] In fact, ICS's brief represents to us that if ICS recovers any damages from Swift in this case, it will hold those funds "in trust" for Mt. Hawley.

to repayment from Hartford of the $1 million Mt. Hawley was ordered to front toward the personal injury settlement.[8]

Affirmed in part, remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8] To the extent not addressed, the parties' arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-3724-14T4