**HARCO NATIONAL INSURANCE COMPANY, Plaintiff–Counter–Defendant–Appellee,**

v.

**ARCH SPECIALTY INSURANCE COMPANY, Zurich North American Insurance Company, Defendant–Counter–Claimant–Appellants,**

**Axis Specialty Insurance Company, Defendant–Counter–Claimant–Cross–Defendant–Appellant.**

**Nos. 08–2269–cv(L), 08–2300–cv(con), 08–2350–cv(con).**

United States Court of Appeals, Second Circuit.

May 13, 2009.

Neal M. Glazer (Jonathan L. Kranz, on the brief), D'Amato & Lynch, New York, N.Y., for Appellant Arch Specialty Insurance Company.

Dan D. Kohane, Hurwitz & Fine, P.C., Buffalo, N.Y. (Meryl R. Lieberman, Traub Lieberman Straus & Shrewsbury LLP, Hawthorne, N.Y., on the brief). for Appellant Axis Specialty Insurance Company.

Melissa F. Brill, Cozen O'Connor, New York, N.Y., for Appellant Zurich North American Insurance Company.

Ira S. Lipsius (David BenHaim, on the brief), Schindel, Farman, Lipsius, Gardner & Rabinovich LLP, New York, N.Y., for Appellee Harco National Insurance Company.

Present: JON O. NEWMAN, ROSEMARY S. POOLER, B.D. PARKER, Circuit Judges.

### SUMMARY ORDER

This is an appeal from an Amended Memorandum and Order of the district court dated April 9, 2008 granting plaintiff-appellee Harco National Insurance Company's ("Harco") motion for summary judgment against defendant-appellants Arch Specialty Insurance Company ("Arch"), Axis Specialty Insurance Company ("Axis"), and Zurich North American Insurance Company ("Zurich"), and denying cross-motions for summary judgment by Arch and Zurich. *Harco Nat'l Ins. Co. v. Arch Specialty Ins. Co.*, No. 06 Civ. 2928, 2008 WL 1699755 (S.D.N.Y. Apr. 9, 2008). Appellants also seek review of the district court's corresponding Final Money Judgments entered on May 14, 2008.

The facts relevant to this appeal are as follows. Mary Brace sustained serious injuries after her car was struck by a tractor-trailer driven by David Boyle. At the time of the accident, the tractor was leased by Boyle's employer, JM Truck and Excavating ("JM"), from DeCarolis Truck Rental, Inc. ("DeCarolis"). The trailer was leased by JM from William Scotsman d/b/a ATCO Trailer Rental ("ATCO"). JM had $1 million in auto liability coverage, issued by National Casualty Company ("National"). Zurich, Axis, and Arch had issued policies to ATCO with combined limits of $22 million. Harco had issued a Business Auto Policy ("Harco Primary Policy") with a limit of $1 million and a Commercial Umbrella Policy ("Harco Umbrella Policy") with a limit of $10 million to DeCarolis. Brace and her husband brought suit against Boyle, JM, DeCarolis, and ATCO. The parties settled the action for $11 million.

National has contributed its $1 million policy limits to the settlement, and is not a party to this dispute. The district court determined the priority of coverage issue between the remaining insurers as follows: the Zurich policy's $2 million limit must be exhausted first, followed by the Axis policy's $5 million limit, with the remainder to be paid by Arch. The district court concluded that Harco was not liable under the terms of its policies. We review the district court's determination de novo. *White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 167 (2d Cir.2007).

Appellants first argue that the district court erred in interpreting Section II of the Harco Umbrella Policy, titled "Who is an Insured," to exclude Boyle and JM.

That provision excludes from the definition of an insured

> any person or entity to whom an *automobile* has been leased or rented; and ... any person or entity other than [DeCarolis] who is operating, maintaining, using, loading or unloading an *automobile* which has been leased or rented from [DeCarolis].

(emphasis added). Harco argues that because JM had leased the automobile from DeCarolis, JM and Boyle are not "insureds" under the policy. Appellants argue that this exclusion does not apply because DeCarolis's tractor is not an "automobile." Appellants point out that unlike the terms "auto" and "covered auto," which are defined by Harco's policies to include the tractor, the term "automobile" is nowhere defined. They argue that as the insurer, Harco has the burden to prove an exception to coverage applies. *See Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984). Harco points out that the term "automobile" is used elsewhere in the policy to refer broadly to motor vehicles. To refer to only passenger vehicles, its policies use the term "private passenger autos."

■ The district court concluded, based on its assessment of the terms of the Harco policies and unrefuted extrinsic evidence, in the form of affidavits from representatives of Harco and DeCarolis, that the parties intended the term "automobile" to include tractor-trailers. The district court did not err in considering extrinsic evidence. *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir.2006) ("Once a court concludes that an insurance provision is ambiguous, 'the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.'" (quoting *Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270, 275–76 (2d Cir.2000))). Appellants' argument that the commonly understood meaning of the term "automobile" does not include commercial vehicles is without support. Thus, we agree with Harco that JM and Boyle were not "insureds" under the terms of the Harco Umbrella Policy.

■ Second, appellants argue that the district court erred in interpreting Exclusion 17 of the Harco Umbrella Policy to exclude coverage for the tractor. Section I.B of the Harco Umbrella Policy excludes certain risks from coverage. The seventeenth such exclusion, titled "Leased Autos," applies to

> Any "covered auto" while leased or rented to others. But this exclusion does not apply to: ...
>
> (c) "bodily injury" ... caused by an "occurrence" resulting from the ownership of a "covered auto."

Harco argues that this provision excludes coverage for the tractor because the tractor was leased to JM at the time of the accident.[1] Appellants argue that exception (c) restores coverage for Brace's bodily injury, because it was caused by an occurrence, the accident, that resulted from DeCarolis's ownership of the tractor, a covered auto. But as appellant Arch concedes: "The exception, as drafted, is nonsensical because an 'occurrence' cannot result from ownership. Liability can result from ownership; not an 'occurrence.'" Thus, we agree with the district court that this exception only restores coverage to *DeCarolis* for its liability as the owner of

1. Zurich argues that the exclusion does not apply because JM is an insured, not an "other[]." We reject this argument because we do not agree that JM is an insured under the "Who is an Insured" provision of the Harco Umbrella Policy.

the tractor. Harco confirms that the exception was intended to provide coverage to DeCarolis for its liability resulting from ownership of the vehicle under New York Vehicle & Traffic Law ("VTL") § 388. But, as Harco argues, the terms of exception (c) do not render Boyle or JM insureds under the Harco Umbrella Policy.

Arch and Axis argue that the Harco Umbrella Policy violates VTL § 345(b)(2) and Section 60–1.1(c)(2) of Title 11 of the Compilation of Codes, Rules & Regulations of the State of New York ("NYCRR"), which require that certain motor vehicle insurance policies insure anyone using the vehicle with the permission of the insured. We agree with the district court that VTL § 345(f) specifically exempts excess insurance coverage, such as Harco's Umbrella Policy, from provisions of the law relating to primary insurance, including VTL § 345(b)(2). 11 NYCRR 60–1.1(c)(2), which requires that an "owner's policy of liability insurance" include permissive users of the vehicle in the definition of insured, does not require this Court to reform the Harco Policies because, under 11 NYCRR 60–1.2(b), an "owner's policy of liability insurance" may exclude "liability assumed by the insured under any contract or agreement." Appellants do not dispute the district court's

holding that the lease agreement between JM and Harco provided that JM was to procure primary coverage for the tractor, which it did, from National. *Harco*, 2008 WL 1699755, at \*5–6. Thus, JM, an insured under the Harco Primary Policy, assumed liability under an agreement. The Harco Primary Policy includes an endorsement providing that its coverage does not apply in such circumstances. Such an exclusion is valid under Section 60–1.2(b). The Harco Umbrella Policy incorporates by reference the valid exclusion of the Harco Primary Policy, thereby providing excess coverage over the limits of the Harco Primary Policy.[2] Therefore, we conclude that the Harco Umbrella Policy does not violate the regulation. *See Liberty Mut. Ins. Co. v. Aetna Cas. & Sur. Co.*, 168 A.D.2d 121, 571 N.Y.S.2d 735, 740 (App. Div.2d Dep't 1991). Because the policies at issue here provide ample coverage to Mary Brace, this is not a case that implicates New York's public policy of "ensur[ing] access by injured persons to a financially responsible insured person against whom to recover for injuries." *Morris v. Snappy Car Rental, Inc.*, 84 N.Y.2d 21, 27, 614 N.Y.S.2d 362, 637 N.E.2d 253 (1994) (quotation marks omitted).

---

2. Axis and Arch argue that the Harco Umbrella Policy is not excess over the Harco Primary Policy, but rather, "drops down" to provide coverage for the first dollar of loss for DeCarolis in this case, because JM was required to procure his own coverage. But two provisions of the Harco Umbrella Policy, a "Leasing or Rental Concerns Endorsement" and Condition K, provide that, regardless of whether DeCarolis's primary policy is in effect, the Harco Umbrella Policy does not cover the first $500,000 in losses. Arch argues that Harco may not now raise these provisions on appeal because it did not assert them in the district court. However, Harco did assert these provisions on its motion for reconsideration, after Arch and Axis raised the

argument that the Harco Umbrella Policy drops down to provide primary coverage and therefore runs afoul of New York law. Although Zurich raised the argument that the Harco Umbrella Policy drops down to provide primary coverage in its summary judgment papers, Zurich did not raise the New York law point. Therefore, even though payment under the primary policy did not occur because of satisfaction of that policy's Contingent Coverage Endorsement, *see Harco*, 2008 WL 1699755, at \*5–6, the Harco Umbrella Policy does not "drop down" because there were no gaps in coverage. *See Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1053 (1st Cir.1993).

■ Axis also advances the counter-intuitive argument that the Harco Primary Policy, issued to DeCarolis, the owner of the tractor, covers ATCO, the owner of the trailer. That policy's definition of "insured" includes DeCarolis and "anyone else while using with [DeCarolis's] permission a covered 'auto' [DeCarolis] own[s], hire[s], or borrow[s]." In the district court, the parties agreed both DeCarolis's tractor and ATCO's trailer were "covered autos" under this policy. However, only the tractor is a "covered auto" that DeCarolis owned, hired, or borrowed. Thus, Boyle was only an insured while using the tractor.[3] ATCO was not an insured under this section. A subsequent section of the policy provides "[a]nyone liable for the conduct of an 'insured' described above" is also an insured, "but only to the extent of that liability." This provision does not apply to ATCO because ATCO is not liable for Boyle's conduct to the extent that Boyle was using DeCarolis's *tractor.* ATCO's liability stems from Boyle's use of its trailer.

■ Finally, Zurich argues that even if the Harco Umbrella Policy does not insure Boyle, it drops down to provide primary coverage for DeCarolis,[4] and therefore, the Harco Umbrella Policy's limits should be exhausted first. Zurich's policy provides that its coverage is "excess" where the covered vehicle is a trailer attached to another vehicle that ATCO does not own.

However, Harco's Umbrella Policy does not insure Boyle. Zurich does not contest that Boyle was the primary tort-feasor, whose negligence caused the accident. DeCarolis's liability, as the owner of the tractor, is vicarious. "[W]hen a judgment debtor, whose tort liability is purely derivative, has the right to full indemnification from another judgment debtor, whose tort liability is primary, and where both judgment debtors are insured under policies which cover the same risk, the courts generally recognize that the insurance furnished to the passive tort-feasor should be considered excess to that furnished to the active tort-feasor." *Liberty Mut. Ins. Co.,* 571 N.Y.S.2d at 742. Thus, we conclude that there was no error in the district court's conclusion with respect to the priority of coverage and ultimate money judgment.

We have considered the other arguments raised on appeal and conclude that they are without merit. Accordingly, the judgment of the district court is hereby AFFIRMED.

---

3. Boyle was not covered under the Harco Primary Policy for his use of the tractor because that policy included an endorsement which provided that its coverage did not apply when the lessee, here JM, was to secure primary coverage. JM did secure such coverage from National. Axis argues that this endorsement does not apply to the *trailer.* But Boyle was only an "insured" under the Harco Primary Policy for the use of the *tractor.*

4. The "Leasing or Rental Concerns Endorsement" and/or Condition K prevent the Harco

Umbrella Policy from dropping down to provide primary coverage. But Zurich has objected that Harco failed to direct the district court's attention to these provisions at any time before its reply brief in support of its motion for reconsideration of the district court's initial summary judgment decision. Zurich argued in its initial summary judgment papers that the Harco Umbrella Policy drops down to provide primary coverage. We assume, without deciding, that Harco has waived this argument as to Zurich.