349 F.2d 376
 The HARTFORD ACCIDENT & INDEMNITY COMPANY, Plaintiff-Appellant,
v.
Stephen E. HILAND, Edgar T. Hiland, Marlene Sue Woodward, Marjorie E. Hill, Ralph F. Hensley, Joseph F. Hensley, Mary Alice Pounds, John P. Pounds, Thomas J. O'Toole, Defendants-Appellees.
 No. 14902.
 United States Court of Appeals Seventh Circuit.
 June 25, 1965.
 
 Emerson Boyd, Robert C. Riddell, Indianapolis, Ind., for appellant Hartford Accident & Indemnity Co., Locke, Reynolds, Boyd & Weisell, Indianapolis, Ind., of counsel.
 Thomas J. Murphy, Erle A. Kightlinger, Harry A. Wilson, Jr., Howard J. DeTrude, Jr., Indianapolis, Ind., for defendants-appellees, Armstrong, Gause, Hudson & Kightlinger, Indianapolis, Ind., of counsel.
 Before DUFFY, CASTLE and KILEY, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 This is a diversity suit by Hartford Accident & Indemnity Company for a declaratory judgment that it had no duty under its policy No. 40 GF 452322 to defend Thomas J. O'Toole, its insured under that policy, in certain tort suits against him, nor to pay any claim arising out of the accident which gave rise to those suits. The district court decided against Hartford, and it has appealed. We reverse.
 
 
 2
 On April 17, 1960, O'Toole, a resident of Indiana, was visiting his family in Pennsylvania. He and his sister, also insured by Hartford, traded cars, and he drove her 1959 Ford Thunderbird back to Indiana, leaving his 1957 Ford with her. Prior to the time of this trade O'Toole had been returning to Pennsylvania about once a month and his sister told him on this occasion to return the car as soon as possible. Because of business and social obligations, however, O'Toole did not return to his family home between April 17, 1960 and June 18, 1960, on which date he was involved in an accident in Indiana, while driving the Thunderbird, which gave rise to the suits of Hiland, and the other named defendants, for damages. Hartford has defended and paid claims for O'Toole as an additional insured under its policy with his sister, but denied coverage under its policy with O'Toole and brought this action.
 
 
 3
 The case was submitted to the district court upon stipulation of jurisdictional facts, the insurance policies, and depositions of Thomas O'Toole and his sister. The parties agreed that the sole issue for decision was whether the Thunderbird was furnished for the "regular use" of O'Toole, so as to be excluded from coverage under the provision in the policy covering his 1957 Ford and insuring him, among other things,
 
 
 4
 3. * * *
 
 
 5
 (b) With respect to a non-owned automobile,
 
 
 6
 (1) the named insured,
 
 
 7
 * * *
 
 
 8
 provided the actual use thereof is with the permission of the owner;
 
 
 9
 * * *
 
 
 10
 4. Definitions: * *
 
 
 11
 "non-owned automobile" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substituted automobile * * *
 
 
 12
 The district court found the provision ambiguous and, applying the familiar rule of construction that an instrument will be construed most strongly against him who prepared it, construed the words "furnished for the regular use" of the insured liberally in favor of O'Toole to mean "a vehicle in fact furnished primarily for the insured's own use, benefit and convenience on a normal or usual basis." The court found that O'Toole's sister had furnished the Thunderbird to him for her own purpose of breaking it in and that it was not furnished for his regular use, but "for the use and benefit of its owner."
 
 
 13
 The O'Toole depositions justify the finding that the exchange of cars was for the sister's benefit. Nevertheless, we think the district court erred in its conclusion that the Thunderbird was "not furnished for the regular use" of Thomas O'Toole.
 
 
 14
 It is true that the term "regular use" may be used in the sense of time, for example, steady as opposed to occasional; or in the sense of type of use, usual as against unusual. But the courts have found no great difficulty in reasonably interpreting the term in applying it to differing facts in various cases. See Farm Bureau Mut. Automobile Ins. Co. v. Marr, 128 F.Supp. 67 (D.N.J. 1955).
 
 
 15
 The district court found that O'Toole unquestionably used the Thunderbird in a "regular" way while he had it and drove it as he would his own both for business and pleasure. The court thought, however, that the use made of the car and the time it was kept were immaterial, the essential question being for whose benefit the car was supplied to O'Toole.
 
 
 16
 In Voelker v. Travelers Ind. Co., 260 F.2d 275 (7th Cir. 1958) Voelker was insured by Travelers under a policy describing his car and containing a clause excluding coverage of any other automobile furnished for his "regular use." This court held that a National Guard truck driven by Voelker in a military convoy for three days while enroute to summer maneuvers was supplied for his regular use, so as to absolve Travelers from the duty of defending him in suit by the driver of a car with which the truck collided. It seems clear that the truck was supplied to Voelker primarily "for the use and benefit of its owner," the National Guard. We do not think, in view of that case, that the district court's interpretation of the term "regular use," requiring as an essential element thereof that the automobile have been supplied "primarily for the insured's own use, benefit and convenience * * *" can be sustained. While the purpose for which the vehicle was supplied may be a relevant factor in determining whether it was for the insured's regular use, Farm Bureau Mut. Automobile Ins. Co. v. Marr, supra, the factor of motive bears no necessary relation to the risk assumed by the insurer under the policy, as do the factors of length and type of use, and it cannot be the controlling factor in the case before us.
 
 
 17
 Defendants contend that the district court's interpretation is applicable to Voelker and other cases involving vehicles supplied to employees for use in the employer's business. One of the issues in Voelker was whether the truck was being used in a business or occupation of the named insured and not covered because of a separate exclusion for non-owned vehicles used by the insured in his business. This court decided that the insured was using the truck in his "business." It did not hold, nor do the other cases hold, that a vehicle supplied to an employee for use in the employer's business is, while being used for that purpose, supplied primarily for the use and benefit of the insured. See, e. g., Schoeknecht v. Prairie State Farmers Ins. Ass'n, 27 Ill.App.2d 83, 169 N.E.2d 148 (1960).
 
 
 18
 We hold that the district court's finding that O'Toole had unrestricted use of the Thunderbird, based on the facts in this record, can lead only to the conclusion that the car was furnished for his "regular use." Since, in general, each case must be decided on its own particular facts and circumstances, Farm Bureau Mut. Automobile Ins. Co. v. Marr, 128 F.Supp. 67, 68, we see nothing to be gained by an extended discussion of the cases cited by the parties and considered by this court.
 
 
 19
 The judgment is reversed and the cause remanded to the district court with instructions to grant judgment for the plaintiff declaring that plaintiff has no duty under its policy No. 40 GF452322 to defend any lawsuits or pay any claims against Thomas J. O'Toole arising out of the collision of June 18, 1960.