**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**WESTERN CASUALTY AND SURETY COMPANY and Richard Sphar, Defendants-Respondents,**

**Ira Sphar et al., Defendants.**

No. 56815.

Supreme Court of Missouri, En Banc.

March 13, 1972.

**422**

———◆———

Miller, Fairman, Sanford, Carr & Lowther, Irven L. Friedhoff, Springfield, for plaintiff-appellant.

Keith V. Williams, Springfield, for defendant-respondent Western Casualty & Surety Co.

Haseltine & Springer, Gregory K. Johnson, Kerry L. Montgomery, Springfield, for defendant-respondent Richard Sphar.

William H. Sanders, amicus curiae, David C. Trowbridge, James S. Helms, John A. Magers, Kansas City, for amicus curiae; Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel.

FINCH, Chief Justice.

This is an appeal from a judgment declaring that a policy of State Farm Mutual Automobile Insurance Company, issued on a 1964 station wagon owned by Ira Sphar, provided coverage under its "nonowned automobile" clause on a 1967 Chevrolet driven by Ira's son Richard and that no coverage was provided for defendant Sphar under the garage policy issued by Western Casualty and Surety Company to Ray Chevrolet Company, the owner of the 1967 Chevrolet.[1]

The judgment of the Circuit Court was affirmed on appeal by the Springfield Court of Appeals (now Missouri Court of Appeals, Springfield District). Thereafter, the case was ordered transferred to this Court pursuant to Art. V, § 10 of the Constitution of Missouri, 1945, V.A.M.S., and is now decided by us the same as if it came on direct appeal. We affirm.

Sometime in June or July, 1967 (the parties did not more specifically fix the date), Ira and Richard Sphar drove from their home in Springfield to Licking, Missouri, in a 1964 station wagon designated as the "owned" automobile in State Farm's policy. It was taken to Ray Chevrolet to be checked because the transmission was "acting up," and also possibly to explore trading for a new automobile. Alva Ray, the President of Ray Chevrolet Company, was a brother-in-law of Ira Sphar and Sphar had purchased cars there on previous occasions.

The station wagon was left at Ray Chevrolet and the Sphars returned home in a demonstrator automobile. Shortly thereafter, Ira Sphar decided to trade his station wagon and Richard Sphar talked on the telephone to Mr. Ray's son at Licking and ordered a new car. Subsequently, Ira Sphar returned to Licking, where he endorsed the title to the station wagon and also signed a blank chattel mortgage which

1. The actual holding as to Western's policy was that it did not apply if State Farm's policy had limits sufficient to pay damages up to the applicable financial responsibility limit, and since it did, Western had no liability for the accident in question.

he left with Mr. Ray. It was agreed that Mr. Ray would sell the station wagon for the best price obtainable. The demonstrator was returned by Sphar at that time and in lieu thereof he took possession of a 1967 Chevrolet belonging to Ray Chevrolet Company.

The station wagon was sold by Ray Chevrolet on July 24, 1967, but Sphar did not immediately purchase a new automobile. The evidence is not very clear as to just what car Sphar was going to buy, and it is uncertain whether he ever contemplated buying the 1967 Chevrolet which he was driving. It was not the car which Richard had ordered from Mr. Ray's son, and there was some testimony that Mr. Ray had determined that he was going to put Sphar in a 1968 rather than a 1967 model car. In any event, the 1967 Chevrolet was never transferred to Sphar. However, he and his family continued to use it as a family car until Richard had the collision on August 31, 1967. Richard drove it to school and testified he put several thousand miles on it.

Three persons brought suit for damages because of claimed negligence on the part of Richard in the August 31, 1967, collision. Thereafter, State Farm brought this action against the Sphars, Western, Ray Chevrolet, and the three accident claimants seeking a declaration of the rights and liabilities of the parties in relation to the State Farm and Western insurance policies.

The trial court decided that coverage of the 1967 Chevrolet was provided under the "non-owned automobile" clause of the State Farm policy, and the first question we must decide is the propriety of that conclusion.

The pertinent portion of the policy referring to coverage on "non-owned" automobiles provided in part as follows: "If the named insured * * * during the policy period * * * owns an automobile covered by this policy * * * such insurance as is afforded by this policy with respect to the owned automobile * * * ap-

plies to the use of a non-owned automobile * * *. Non-Owned Automobile— means an automobile * * * not (i) owned by, (ii) registered in the name of, or (iii) furnished or available for the frequent or regular use of the named insured, * * * other than a temporary substitute automobile." Clearly, the 1967 Chevrolet was not owned by Ira Sphar, nor was it registered in his name. The only real question is whether it was "furnished or available for the frequent or regular use" of the Sphars so as to exclude coverage under (iii) of the above provision.

State Farm's policy was intended basically to provide coverage on one designated vehicle (the 1964 station wagon) in return for the payment of a premium based on single car coverage. However, the policy does contain clauses which provide limited additional coverage for that single premium. One such instance is in the case of a "temporary substitute automobile" which is defined in the policy as follows: "Temporary Substitute Automobile—means an automobile not owned by the named insured or his spouse while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." This provision is consistent with the basic idea of insuring one automobile for one premium because the car designated in the policy is out of service temporarily and in lieu thereof the company agreed to provide coverage on the temporary substitute. When a vehicle qualifies under the above provision, it becomes an "owned" automobile for insurance purposes under the terms of the policy.

█ Although the trial court did not rely on this substitute automobile provision, the Sphars claim that it is applicable to Richard's accident. We disagree because the occasion for use of the 1967 Chevrolet did not arise out of the "breakdown, repair, servicing, loss or destruction" of the station wagon. Instead, it resulted from the sale of the station wagon and the delay by Sphar in deciding the question of what new

car to buy. For this reason, the "temporary substitute automobile" clause as it is now written is not applicable.

Another instance of additional coverage is provided by the policy provision with respect to operation of "non-owned" automobiles. This is the clause on which both the trial court and the Court of Appeals relied in holding the State Farm policy applicable. The effect and purpose of such a clause is well stated in a statement with reference to "drive other cars" provisions in an Annotation in 86 A.L.R.2d 937, 940, as follows: "The purpose of the 'drive other cars' provision in an automobile liability policy is to cover occasional or incidental use of other cars without the payment of an additional premium, but to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase in the premium." In order to thus limit this additional coverage in State Farm's policy it provided that this additional coverage would not be applicable to a non-owned automobile "furnished or available for the frequent or regular use of the named insured * * * other than a temporary substitute automobile."

■ In deciding whether a non-owned automobile has been furnished or available for frequent or regular use, some courts have held that such question is to be determined solely or at least primarily upon the basis of the purpose for which the non-owned automobile was furnished, rather than on the quantum of its use. Cotton States Mutual Ins. Co. v. Falls, 114 Ga.App. 812, 152 S.E.2d 811. This was the basic theory upon which this case was affirmed by the Springfield Court of Appeals. Other courts have decided the question of applicability of the exclusion on the basis of length or type of use rather than purpose for which the car was furnished. Hartford Accident & Indemnity Co. v. Hiland, 7 Cir., 349 F.2d 376. We have considered these and all the other cases cited in the various briefs which have been filed. Without detailing and discussing all of them, we conclude that we should not limit ourselves either to a test of merely determining motive or purpose or one of simply measuring length and extent of availability of use. Rather, each case should be decided on its own facts, and the court should take into consideration the type and length of use, the purpose for which the non-owned automobile was furnished, and any other pertinent facts, including a determination of whether the use and purpose was in harmony with or violative of the objective of the "non-owned automobile" clause.

■ Ira Sphar and his family had possession of the 1967 Chevrolet at least during the period between July 24, 1967, when the station wagon was sold, and August 31, 1967, when the collision occurred. It appears likely that the use of the car was for some additional period because the evidence indicates that the demonstrator was returned and the 1967 Chevrolet picked up prior to the date when the station wagon was sold. If, during this period of six weeks or so, Ira Sphar had retained possession of his station wagon and had used it regularly, and if, during that same period, Sphar and his family had had possession and use of the 1967 Chevrolet on a daily and regular basis similar to the use which they made of the car in this case, it may be that the State Farm policy would not have provided coverage for the accident involving the 1967 Chevrolet which occurred on August 31, 1967. In that event, Sphar and his family would have been seeking to have coverage on two automobiles during a six weeks' period in which both cars would have been used regularly.

In this case, however, Sphar did not operate two vehicles during the six weeks period in July and August when he and his family operated the 1967 Chevrolet. His station wagon had been left with Ray Chevrolet for sale and on July 24 it was sold. Hence, the Sphars operated only a single vehicle (the 1967 Chevrolet) during July and August of 1967, and they seek coverage thereon under the "non-owned automobile" provision.

It is true that the 1967 Chevrolet was not a "temporary substitute automobile" as that term is defined in the policy, but it was a substitute vehicle in fact for the insured station wagon during the time Ray Chevrolet had it for sale and after it had been sold pending the time when a new car would be obtained.

To permit coverage during this period on the 1967 Chevrolet is consistent with the idea that State Farm was to provide coverage on a single vehicle (with the limited additional coverage provided by certain clauses) during the policy period. If such coverage is not afforded, State Farm collected a premium for which it afforded essentially no insurance coverage and the insured (Sphar) would not be getting anything for his premium during that period. State Farm has not tendered back the premium for the period after the station wagon was sold and has not sought to have the policy cancelled from and after that time. As a matter of fact, State Farm stipulated that its policy was outstanding and the premium paid at the time of the accident in question.

A case factually similar to this one was considered by the Louisiana Court of Appeal in the case of Lincombe v. State Farm Mutual Automobile Ins. Co., La.App., 166 So.2d 920. There, Mrs. Grigsby owned a 1959 Chevrolet on which she carried a State Farm policy. During the policy term, she purchased a new station wagon, trading in her Chevrolet as part payment. She delivered possession of the Chevrolet to the dealer and he turned over to her a Ford to use until her new station wagon arrived. Thirteen days later, while driving the Ford, she had an accident. In subsequent litigation State Farm contended that the Ford was furnished for the regular use of Mrs. Grigsby and hence was not covered under the "non-owned automobile" clause of her insurance policy. After discussing the purpose of "non-owned automobile" clauses, the court rejected the contention of State Farm and held the substitute vehicle to be covered, saying, 166 So.2d 1. c. 924:

"In this case the 1963 Ford which Mrs. Grigsby was driving at the time of the accident had been loaned to her for only a brief period of time while awaiting the arrival of the new station wagon which she had ordered. Her use of it was to be discontinued as soon as delivery was made of the new vehicle which she had purchased. The Sulphur Motor Company had undertaken merely to provide her with some vehicle to drive while she was without a car. There was no commitment to furnish this particular Ford automobile, and the Motor Company could have taken it back and furnished her with another at any time without violating any duty which it owed her. The status of the 1963 Ford which she was driving at the time of the accident, therefore, was not that of an automobile which had been furnished to her for her 'regular use.' She had sold and delivered her old car to the Motor Company, so she was not driving both cars during that period of time, and thus the risk to the insurer was not increased and there was no double coverage. Under these circumstances we think the car which Mrs. Grigsby was driving at the time of the accident was not excluded from coverage under the State Farm policy."

State Farm characterizes Lincombe as a maverick which is unsound, but we do not agree. It reaches a proper result and does not violate the purpose of the exclusion clause of the "non-owned automobile" provision by allowing double coverage for a single premium. That such is the purpose of such exclusionary language has been recognized in cases other than Lincombe. For example, in Aler v. Travelers Indemnity Co., D.C.Md., 92 F.Supp. 620, 623, the court said: "More specifically the evident intention of the limitation with respect to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured * * *."

In American Automobile Ins. Co. v. English, 266 Ala. 80, 94 So.2d 397, 401, the

court said: "Subdivision (a) of Insuring Agreement V simply means that English is not covered by the Farm Bureau policy here involved while operating other automobiles or trucks owned by him or furnished to him for regular use by someone else. We think it obvious that Subdivision (a) of Insuring Agreement V is designed to prevent an insured, who owns or regularly uses more than one vehicle, from securing one policy of insurance covering a specific vehicle and operating other vehicles under the coverage of that one policy."

For the reasons indicated, we hold that State Farm's policy did cover the accident of Richard Sphar in the "non-owned" Chevrolet on August 31, 1967.

■ The second question for decision is State Farm's contention that even if there was coverage for Richard Sphar under State Farm's policy, Western is liable for all or part of the damages incurred. The determination of this question involves interpretation of provisions in the two insurance policies.

State Farm's policy contains an "Other insurance" clause which provides that "The insurance with respect to a temporary substitute automobile, a trailer and a non-owned automobile shall be excess over other collectible insurance."

The Western policy included an endorsement entitled "Limited Coverage For Certain Insureds" which provided in part as follows:

"In consideration of the reduced rate of premium made applicable to the Garage Liability Insurance, it is agreed that under the provisions of the policy relating to Garage Liability Insurance garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions:

"1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer

and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy."

In Arditi v. Massachusetts Bonding & Insurance Co., Mo., 315 S.W.2d 736, this court considered a case in which Travelers Insurance Company insured a truck being driven by an employee of the owner, and Massachusetts Bonding & Insurance Company insured the driver under a "non-owned automobile" clause. The Massachusetts Bonding policy provided that its insurance as to non-owned automobiles "shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to the automobile or otherwise." The Travelers policy had a similar provision as to non-owned automobiles, but its "other insurance" provision was amended by endorsement to provide that "the insurance afforded by this policy shall be excess over any other valid and collectible insurance if the insured has other insurance against the loss covered by this policy." This court concluded that the above provisions were indistinguishable in meaning and intent and should be held to be mutually repugnant and hence to be disregarded. The court held both companies to be liable, the same to be prorated in proportion to the amount of insurance provided by their respective policies.

State Farm claims that if Western is not primarily responsible for this accident, then at least the foregoing clauses should be held to be mutually repugnant under the Arditi doctrine and the loss should be prorated between the two insurance companies.

State Farm's excess coverage provision in this case is of the type considered in Arditi. The issue is whether the Western clause is to be considered comparable so that Arditi would apply or whether its language is sufficiently different to call for a different result. Both the trial court and

the Springfield Court of Appeals concluded that it did. The question is not an easy one, and courts of other states have not been unanimous in the result reached in such a situation, but we have concluded that the trial court and the Springfield Court of Appeals were right on this issue and that the Western policy provision did make it inapplicable. In so holding, we adopt, without quotation marks, some of the language used by Judge Titus in the opinion he wrote for the Court of Appeals.

Where a "no liability" clause expressly provides that its insurance does not apply to any loss covered by "other valid and collectible insurance, whether primary, excess or contingent," numerous authorities have held that the insurance company whose policy contains such clause will be absolved from liability in a case where the other policy contains what is designated as an "excess" clause.[2] The rationale for such holding is that the insurer whose policy contains a specific "no liability" clause anticipated the possibility of the existence of an "excess" clause in the policy of a customer of the garage and expressly contracted against liability in that situation. The language of the policy seems to be clear and explicit that the premium reduction in the garage liability policy was predicated upon the excluded risks enumerated. Effect should be given to that language, and when that is done, the result is that

Western is not liable in this factual situation.

Judgment affirmed.

All concur except SEILER, J., who concurs in separate concurring opinion filed.

SEILER, Judge (concurring).

I concur in the affirmance with respect to the issues before us, but desire to point out the parties did not raise the question of whether, in order for the non-owned automobile part of the State Farm policy to operate, Sphar, at the time of the collision, must have been the owner of the automobile described in the State Farm policy (or of a newly acquired automobile) which he was not, the station wagon having been sold 38 days before the collision, and I do not understand the opinion to pass on this question. An insurer would not ordinarily be aware, until given notice, that the insured has sold the car described in the policy, but the insured knows and also knows whether he has purchased another car. If he has, it would fall under the standard "newly acquired automobile" part of the policy. If the insured sells the automobile described in the policy and if he does not purchase another car, he can get back his remaining premium by informing the company he wants to cancel. If he does nothing, I do not believe this means there is an expansion of coverage or a change in the terms of the policy.

2. Indiana Lumbermens Mutual Insurance Co. v. Mitchell, 7 Cir., 409 F.2d 392, 395; Continental Casualty Company v. Suttenfield, 5 Cir., 236 F.2d 433, 438(5); Government Employees Ins. Co. v. Globe Indemnity Co., Ky., 415 S.W.2d 581, 582; Cook v. Strolle, 39 Wis.2d 715, 159 N.W.2d 686, 687; Faltersack v. Vanden Boogaard, 39 Wis.2d 64, 158 N.W.2d 322, 327(6); Allstate Insurance Co. v. Shelby Mutual Ins. Co., 269 N.C. 341, 152 S.E.2d 436, 443–444(7); Continental Cas. Co. v. Weekes, Fla., 74 So.2d 367, 368–369(1), 46 A.L.R.2d 1159, 1162–1163(1); Davis v. De Frank, 33 A.D.2d 236, 306 N.Y.S.2d 827; 7 Am.Jur.2d, Automobile Insurance, § 202; Note, 27 Louisiana Law Review 114.