# Illinois Official Reports

## Appellate Court

---

### *Justin Time Transportation, LLC v. Harco National Insurance Co.*,
### 2014 IL App (5th) 130124

---

| | |
|---|---|
| Appellate Court Caption | JUSTIN TIME TRANSPORTATION, LLC, HAAG FOOD SERVICE, INC., DERELL L. BOYD, and INDIANA INSURANCE COMPANY, Plaintiffs-Appellees, v. HARCO NATIONAL INSURANCE COMPANY, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-13-0124 |
| Filed | March 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the coverage for a fatal vehicular accident involving a truck leased by plaintiffs from defendant's insured, the trial court erred in entering summary judgment for plaintiffs based on the finding that the policy issued to the lessor of the truck was ambiguous and that defendant was not entitled to invoke the policy exclusions to avoid coverage, since the lease provided by defendant's insured required plaintiffs to obtain their own liability coverage and indemnify defendant's insured for any losses, plaintiffs complied with those obligations, and several states have upheld similar agreements and determined that the policy defendant issued to the lessor only provided contingent coverage; furthermore, the appellate court rejected plaintiffs' claims that the entire agreement between the parties was ambiguous and that defendant insurer waived its right to raise its policy endorsements as affirmative defenses. |
| Decision Under Review | Appeal from the Circuit Court of Clinton County, No. 10-MR-57; the Hon. Dennis E. Middendorff, Judge, presiding. |
| Judgment | Reversed; judgment entered. |

Counsel on
Appeal

Jennifer L. Dickerson, Robert J. Bassett, and Ross S. Titzer, all of
Williams Venker & Sanders LLC, of St. Louis, Missouri, and Ira
Lipsius, *pro hac vice*, of Lipsius-Benhaim Law, LLP, of Kew
Gardens, New York, for appellant.

Hopey A. Gardner and Jeffrey K. Suess, both of Rynearson, Suess,
Schnurbusch & Champion, LLC, of St. Louis, Missouri, for appellees.

Panel

JUSTICE CHAPMAN delivered the judgment of the court, with
opinion.
Justices Spomer and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1      This case presents an insurance coverage question resulting from a fatal motor vehicle accident involving a leased truck. Hogan Truck Leasing (Hogan) owned the truck and leased it to Justin Time Transportation, LLC (Justin Time). The driver of the leased vehicle, Derell L. Boyd, lost control of the truck and slid on ice-covered roads. The truck driven by Boyd struck and killed Edwin W. Sargent. Harco National Insurance Company (Harco) issued the insurance policy involved with this appeal. The named insured under the Harco policy was Hogan. The Harco policy covered permissive users of Hogan's vehicles. Justin Time maintained a $1 million liability insurance policy issued by Netherlands Insurance Company (Netherlands). Justin Time also had a $3 million umbrella policy written by Indiana Insurance Company. Edwin W. Sargent's estate filed a civil suit for wrongful death against the plaintiffs. The lawsuit settled. The plaintiffs then filed a declaratory judgment action against Harco to determine their rights pursuant to Harco's policy. The trial court granted summary judgment for the plaintiffs, finding that provisions of Harco's policy were ambiguous and that Harco waived its right to use the policy exclusion. Harco appeals.

¶ 2                                  FACTS

¶ 3      The accident at issue in this coverage case occurred on December 23, 2008, on Interstate 70 in Warren County, Missouri. The road conditions were icy. Late that morning, a vehicle driven by Edwin W. Sargent was in an accident with a vehicle driven by Adam Leninger. Both vehicles parked along the westbound median of Interstate 70 immediately after the accident. Edwin W. Sargent got out of his vehicle and stood in between his vehicle and the Leninger vehicle.

¶ 4      At approximately noon, a second collision occurred. A tractor-trailer operated by Derell L. Boyd of Justin Time collided twice with a tractor-trailer operated by Jeffrey Kollman. After the

second collision between the two rigs, Boyd's rig slid on the ice and rotated counterclockwise toward the center median. Boyd's rig struck the median divider, the Sargent vehicle, Edwin W. Sargent, and finally the Leninger vehicle. Edwin W. Sargent died at the scene of the accident.

¶ 5    Edwin W. Sargent's wife filed a wrongful death claim in federal court against Derell L. Boyd, Justin Time, and Haag Food Service, Inc. (Haag Food), an entity connected to Justin Time.

¶ 6    Hogan leased the truck involved in this accident to Justin Time. Paragraph 10 of the lease covers the category of insurance and provides detailed requirements for liability insurance responsibility between the parties. That provision provides as follows:

> "A standard policy of automobile liability insurance *** with limits specified *** will be furnished and maintained by [Justin Time], written by a company satisfactory to Hogan, covering both Hogan and [Justin Time] as insured for the ownership, maintenance, use and operation of each Vehicle. Such policy will provide that the coverage is primary and not additional or excess coverage over insurance otherwise available to either party and that it cannot be cancelled or materially altered without 30 days' prior written notice to both parties."

Schedule A contains the express requirement that Justin Time provide liability insurance with $1 million in combined single limits. If Justin Time failed to provide and maintain this liability insurance, Justin Time was required to "RELEASE, DEFEND, INDEMNIFY AND HOLD HOGAN HARMLESS FROM ANY RESULTING CLAIM, LOSS OR DAMAGE, INCLUDING WITHOUT LIMITATION ANY CLAIM OR CAUSE OF ACTION FOR DEATH OR INURY TO PERSONS, LOSS OR DAMAGE TO PROPERTY, OR ECONOMIC DAMAGE."

¶ 7    Haag Food and Justin Time maintained a $1 million business automobile liability policy with Netherlands. The policy language states that the policy covers "any auto," which ostensibly includes leased vehicles. Furthermore, the Netherlands policy lists the specific Hogan vehicle as a covered automobile. The policy defines an insured to include "[a]nyone else while using with your permission a covered 'auto' you own, hire, or borrow." The policy lists Hogan as a loss payee for certain vehicles, including the one involved in this accident.

¶ 8    Haag Food and Justin Time also maintained a $3 million commercial umbrella liability policy, issued by Indiana Insurance Company (Indiana). Indiana wrote the policy as excess over several policies held by Haag Food and Justin Time, including the Netherlands policy. The Indiana policy defines an insured as "[a]ny other person or organization who is an insured in the 'scheduled underlying insurance.' " Indiana also agreed to pay sums in excess of the "retained limit" that the insured is obligated to pay as damages for bodily injury, property damage, or personal injury to which the insurance applies. The term "retained limit" is defined as "[t]he total amount of 'scheduled underlying insurance' or 'other underlying insurance' applicable to the injury or damage whether such insurance is collectible or not."

¶ 9    Harco issued a business auto policy to Hogan in effect on the date of the loss providing $1 million in liability coverage. Permissive users of vehicles are covered. The policy contained a specific endorsement concerning leased vehicles:

"this endorsement applies when the 'lease or rental agreement' in effect at the time of an 'accident' specifies that the lessee or rentee is responsible for providing primary liability insurance or primary physical damage insurance."

The Harco policy defines a "leased auto" as "an auto that you lease to a customer." Harco's policy provides that the applicable liability insurance for a covered auto (a leased or rented auto) is limited to situations in which the insurance mandated by the lease agreement is uncollectible. The policy specifically states that "[t]he insurance provided by this endorsement does not apply if any other insurance is collectible." The Harco coverage listed in the endorsement, by its own policy language, is not excess coverage.

¶ 10   Justin Time, Haag Food, Derell Boyd, and Indiana brought this declaratory judgment action. Plaintiffs asked the trial court to find that Hogan's contingent liability policy with Harco provided them with insurance coverage. More specifically, plaintiffs asked the trial court to find that the contingent coverage endorsement included with the insurance policy did not apply. Harco contended that the policy did not provide coverage to plaintiffs. Both sides filed motions for summary judgment.

¶ 11   The trial court granted plaintiffs' motion for summary judgment, concluding that the contingent coverage endorsement to the Harco policy contained ambiguous language rendering its purported exclusion of coverage void. The trial court also found that Harco waived its right to raise the endorsement because Harco did not promptly cite to the endorsement in response to the claims made against the policy.

¶ 12                                        LAW AND ANALYSIS

¶ 13   In determining whether summary judgment is appropriate, the trial court strictly construes all evidence in the record against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). The court is required to review all pleadings, depositions, admissions, and affidavits on file to decide if there is any issue of material fact. *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992). If material facts are in dispute, then the trial court is required to "view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from the facts presented in favor of the nonmovant." *Martens v. MCL Construction Corp.*, 347 Ill. App. 3d 303, 312, 807 N.E.2d 480, 487 (2004) (citing *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11, 615 N.E.2d 736, 739-40 (1993)). Courts should not use summary judgment to resolve questions of fact. *Martens*, 347 Ill. App. 3d at 312, 807 N.E.2d at 487 (citing *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517, 622 N.E.2d 788, 792 (1993)). Courts use summary judgment to determine whether a factual question exists. *Id.* A mere factual possibility is insufficient to defeat a summary judgment motion. *Wilmere v. Stibolt*, 152 Ill. App. 3d 642, 648, 504 N.E.2d 916, 919 (1987). In considering the motion, the court should not ignore evidence or inferences negative to plaintiff's position. *Yacko v. Curtis*, 339 Ill. App. 3d 299, 302, 789 N.E.2d 1274, 1276 (2003).

¶ 14   While in general summary judgments are a quick means to end litigation, courts consider the use of summary judgment to be drastic. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215 (1992); *Colvin v. Hobart Brothers*, 156 Ill. 2d 166, 169-70, 620 N.E.2d 375, 377 (1993). Courts should not grant summary judgment unless the

facts and issues raised by the party seeking judgment are free from doubt. *Id.* Our review of summary judgment is *de novo*. *Myers*, 225 Ill. App. 3d at 72, 587 N.E.2d at 497.

¶ 15    Questions concerning insurance policy language are questions of law subject to *de novo* review. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80, 687 N.E.2d 72, 75 (1997). An insurance policy is a contract, and the primary rules of contract construction apply. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005). A court's main objective in reviewing an insurance contract is to determine and give effect to the intentions of the parties. *Id.* In reviewing the contract, the courts should look to the contract language to determine the parties' intent. *Id.* Additionally, the insurance contract should not be broken apart and courts must not consider specific provisions separately. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 442, 692 N.E.2d 1196, 1199 (1998). The court must consider the entire policy and give effect to all provisions, taking into account the type of insurance, the nature of the risks undertaken, and the overall purpose of the insurance policy. *Id.* In situations where insurance policy language is ambiguous or uncertain–subject to more than one interpretation–then the court must construe that language in favor of the insured and against the insurer that wrote the policy language at issue. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108-09, 607 N.E.2d 1204, 1212 (1992). The court must afford the language utilized in a policy its plain and ordinary meaning, and should not try to find an ambiguity in the language where none exists. *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 5, 429 N.E.2d 1203, 1205 (1981).

¶ 16    The parties agree that the lease contract between Hogan and Justin Time/Haag Food contained a choice-of-law provision establishing that Missouri law would be applied.

¶ 17                              Ambiguity of the Policy Language

¶ 18    Harco disagrees with the trial court's conclusion that its policy language was ambiguous. Harco claims that by the plain terms of its policy, it owes no coverage to the plaintiffs. At issue is Harco's structure of the policy as a contingency policy by way of endorsements incorporated into the policy. The trial court found these endorsements were fatally ambiguous.

¶ 19                              Primary Versus Contingent Coverage

¶ 20    Initially, Harco states that it is not obligated to provide coverage to the plaintiffs because the Hogan lease contractually bound the plaintiffs to purchase their own liability insurance. Harco agrees that the terms of its policy list the particular truck involved in this accident and that the plaintiffs meet the policy definition of a covered person. Despite these facts, Harco argues that its policy does not apply in this factual situation. Harco explains that it structured this policy for Hogan as a contingency policy rather than as a primary policy. Harco points to Hogan's lease, which contractually required its lessees to obtain liability insurance. Because Harco's policy is contingent, Harco claims that the policies issued by Netherlands and Indiana apply to these accident claims as primary coverage. Harco sold this contingency policy to Hogan at a much lower price than what a primary liability policy would cost. Harco explains that its policy only provides coverage in situations where the other coverage becomes unavailable. Furthermore, the Indiana policy only referenced its status as excess coverage to the underlying Netherlands policy. There was no reference in the Indiana policy to the Harco policy. The Indiana policy contained language by which Indiana would only pay claims that

exceeded the limits of the Netherlands policy. Harco contends that Indiana could not have had any expectation that Harco's policy would take effect in light of the fact that both of the plaintiffs' policies with Netherlands and Indiana applied to the loss.

¶ 21    In support of Harco's argument that its policy is a contingency policy, Harco cites to two Missouri cases. The first case is a federal district court unreported order. Federal district court orders are not precedential or binding on this court. *County of Du Page v. Lake Street Spa, Inc.*, 395 Ill. App. 3d 110, 122, 916 N.E.2d 1240, 1250 (2009). Although we are not bound to follow it, we review the order for its persuasive authority because the case involves the identical lease, involves the same Harco policy, and applies Missouri law.

¶ 22    In *Cameron Mutual Insurance Co. v. Harco National Insurance Co.*, No. 4:07CV01273, 2009 WL 5214899 (E.D. Mo. Dec. 23, 2009), the Eastern Division of the United States District Court for the State of Missouri considered this exact contingency provision on Harco's motion for summary judgment. In *Cameron Mutual*, Baker Ice Company leased a truck from Hogan. *Id.* at *1. Baker Ice maintained its own business liability policy through Cameron Mutual. *Id.* The lease agreement between Hogan and Baker Ice contained the same provision as this lease–it provided that Baker Ice was obligated to furnish its own liability insurance for each vehicle on the lease. *Id.* Cameron Mutual acknowledged that its policy provided primary coverage for the leased Hogan truck. *Id.* Baker Ice's employee, operating Hogan's truck, had an accident during the effective dates of the Cameron Mutual coverage. *Id.* Cameron provided defense and indemnity to Baker Ice, including an $850,000 settlement to an injured party. *Id.*

¶ 23    Before the court addressed the ambiguity argument raised by Cameron Mutual about the Harco policy language, the court noted that the first step was to review the indemnity agreement within the lease between the parties. *Id.* at *4 (citing *Federal Insurance Co. v. Gulf Insurance Co.*, 162 S.W.3d 160 (Mo. Ct. App. 2005)). " 'To hold otherwise would render the indemnity contract between the insureds completely ineffectual and would obviously not be a correct result, for it is the parties' rights and liabilities to each other which determine the insurance coverage; the insurance coverage does not define the parties' rights and liabilities one to the other.' " *Id.* at *5 (quoting *Federal Insurance Co.*, 162 S.W.3d at 165 (citing *Chubb Insurance Co. of Canada v. Mid-Continent Casualty Co.*, 982 F. Supp. 435, 438 (S.D. Miss. 1997))). The court explained that if the court does not consider the terms of the indemnification agreement, the court might void the agreement and impose liability on another party who bargained for indemnity in consideration of that contract. *Id.* (citing *Federal Insurance Co.*, 162 S.W.3d at 165).

¶ 24    In light of this legal precedent, the court reviewed the Hogan lease agreement with Baker Ice. The court concluded that Baker Ice was responsible for providing insurance coverage for the leased Hogan truck and that Baker Ice would indemnify Hogan for any losses Hogan incurred arising from the truck or its operation. *Id.* The only boxes checked and initialed in the lease agreement required Baker Ice to provide coverage. *Id.* Hogan and Baker Ice did not check and initial the boxes that stated that Hogan would provide liability coverage. *Id.*

¶ 25    Cameron Mutual also argued that Baker Ice and its driver were independently covered by the Harco policy due to Hogan's permission to use the Hogan vehicle. *Id.* The court dismissed this argument on the basis that the Harco policy did not specifically name Baker Ice and/or its driver as an insured under the Harco policy. *Id.* On the date of the accident, Baker Ice, via its driver, was operating the Hogan truck pursuant to the lease. *Id.* That lease obligated Baker Ice

to provide primary insurance coverage as it did with the Cameron policy. *Id.* The court reiterated that the rights owed to each other pursuant to the lease determine the insurance coverage and that the insurance coverage does not determine the parties' rights and liabilities to each other. *Id.*

¶ 26 After rejecting other arguments, the court held that the Harco policy provided contingent coverage only, that the coverage provided by Baker Ice pursuant to its lease with Hogan was applicable, and therefore that summary judgment was appropriate. *Id.* at *8.

¶ 27 Harco also cites to the case of *State Farm Mutual Automobile Insurance Co. v. Western Casualty & Surety Co.*, 477 S.W.2d 421 (Mo. 1972), which involved a contingency provision. In *State Farm*, a dealership, Ray Chevrolet, had a garage type of motor vehicle policy issued by Western Casualty. *Id.* at 422. The owner of the dealership allowed a family member to use one of these vehicles. *Id.* at 422-23. An accident occurred, and two different insurance policies potentially provided coverage. *Id.* at 423. State Farm issued the other policy purchased by the family who borrowed the dealership vehicle. *Id.* The State Farm policy covered one vehicle, but contained a "Temporary Substitute Automobile" provision. *Id.*

¶ 28 The trial court's decision was not based upon the "temporary substitute automobile" provision, but nevertheless, the issue was raised on appeal. The appellate court concluded that this provision did not factually apply because the substitute automobile, as contemplated by the State Farm language, was one used when the primary vehicle had broken down, was being repaired or serviced, or was lost or destroyed. *Id.* at 423-24. In this case, the family sold its primary vehicle to the dealership. *Id.* at 423. Instead of immediately buying its replacement, the family continued to drive the dealership vehicle for an extended time. *Id.* The trial court held that the nonowned vehicle provision in the State Farm policy was applicable to this loaner vehicle and, therefore, to this accident. *Id.* Given the extensive time that the family had been driving this "loaned" vehicle, the court concluded that the State Farm policy provision applied as this dealership vehicle constituted a "substitute" vehicle. *Id.* at 423-24.

¶ 29 State Farm claimed that Western Casualty should still bear at least a portion of the liability under its "other insurance" clause. *Id.* at 426. The appellate court disagreed, finding that dealership customers are not insureds if other valid and collectible insurance is available to the customer with limits sufficient to pay damages. *Id.* The supreme court agreed with holdings from numerous other states that absolve an insurer from liability finding that the "no liability" clause is plain in its meaning. *Id.* at 427. Western Casualty predicated its premium reduction upon this excluded risk, and the court concluded that it must view the insurer's policy language with the proper intent. *Id.*

¶ 30 While there is no Illinois case interpreting Harco's contingent endorsement, the Illinois Supreme Court issued an opinion in 1977 enforcing a similar form of contingent coverage issued to truck owners who lease their trucks to other motor carriers. *St. Paul Fire & Marine Insurance Co. v. Frankart*, 69 Ill. 2d 209, 370 N.E.2d 1058 (1977). In *Frankart*, a leased tractor-trailer was involved in a motor vehicle accident after the driver had unloaded the cargo. *Id.* at 212-13, 370 N.E.2d at 1060. The owner and operator of the vehicle was Frankart. *Id.* at 211, 370 N.E.2d at 1059. The lease was between Frankart and a company called Wilson. *Id.* Frankart did not have an Interstate Commerce Commission permit, but Wilson did. *Id.* The purpose of the lease was for Frankart to transport Wilson's freight on an interstate trip with the use of Wilson's ICC number and Frankart's tractor-trailer. *Id.* The lease between the owner

and the renter of the truck obligated the owner–Frankart–to obtain "bobtail and deadhead" insurance. *Id.* at 212, 370 N.E.2d at 1059. The term "bobtail" means the operation of a tractor without a trailer, and the term "deadhead" means the operation of a tractor while pulling an empty trailer. *Id.* At the time of the accident, Frankart was driving the truck in a "deadhead" situation because the driver had delivered Wilson's freight. *Id.* at 212-13, 370 N.E.2d at 1060.

¶ 31 The owner of the tractor-trailer had an insurance policy with St. Paul that contained an endorsement entitled "Insurance for Non-Trucking Use." *Id.* at 212, 370 N.E.2d at 1059. The endorsement stated that it did not apply when the operator used the trailer to haul property and when the owner used the tractor-trailer in the business pursuant to the lease. *Id.* at 212, 370 N.E.2d at 1059-60. Because the scope of the insurance coverage was so limited, the annual policy premiums were only $61 for bodily injury liability and $60 for property.

¶ 32 At issue was whether the accident occurred at a time when the owner–Frankart–was still operating the vehicle on the business of the rental company–Wilson. *Id.* at 213, 370 N.E.2d at 1060. The appellate court concluded that the tractor-trailer was still on Wilson's business at the time of the accident. *Id.* After considering the entire policy, the supreme court stated that the St. Paul "policy clearly provides that coverage is excluded when Frankart's trailer is being used in the business of a lessee even if, at the time of the accident, the tractor is pulling an empty trailer." *Id.* at 216, 370 N.E.2d at 1061.

¶ 33 On this particular occasion, Frankart's driver drove from his Ohio home to one of Wilson's terminals in Ohio. *Id.* at 217, 370 N.E.2d at 1062. He loaded the trailer in Ohio and delivered that load pursuant to Wilson's instructions in Tulsa, Oklahoma; he returned to the Granite City, Illinois, terminal and Wilson advised that there was no new load to haul back to Ohio. *Id.* He headed toward Peoria to see if he could obtain a load from another carrier. *Id.* Ultimately, after the accident, he hauled the empty trailer back to Ohio. *Id.*

¶ 34 Wilson took the position that as soon as it advised Frankart's driver that it had nothing for him in Granite City, the driver ceased working for Wilson. *Id.* at 218, 370 N.E.2d at 1062. The supreme court held that Wilson's job for Frankart did not end until the truck returned to the point of origin in Ohio. *Id.* at 218-19, 370 N.E.2d at 1062. Therefore, the exception in St. Paul's policy endorsement applied and St. Paul provided no coverage because Wilson still had exclusive possession, responsibility, and use of Frankart's truck until it returned to the point of origin. *Id.*

¶ 35 We have considered both of the Missouri cases cited by Harco, and we have considered *St. Paul Fire & Marine Insurance Co. v. Frankart*, as well as cases in other states upholding contingent insurance endorsements generally and Harco's contingent endorsement specifically, and we agree with Harco's position that in a general sense, its policy provided contingency coverage. See *Zurich American Insurance v. Grand Avenue Transport*, No. C 09-00197, 2010 WL 682530 (N.D. Cal. Feb. 23, 2010) (the language of Zurich's contingent endorsement for a leased or rented vehicle was plain and clear); *Canal Insurance Co. v. Distribution Services, Inc.*, 176 F. Supp. 2d 559, 568-69 (E.D. Va. 2001) (language of contingent endorsement was clear and enforceable); *Interstate Aerials, LLC v. Great American Insurance Co. of New York*, 352 F. App'x 637 (3d Cir. 2009) (contingent policy is unambiguous); *Green v. Great American Assurance Co.*, No. 2:08CV00005, 2008 WL 2561886 (E.D. Ark. June 24, 2008) (contingent policy did not apply when the driver's primary policy, obtained pursuant to the vehicle lease, was collectible); *Harco National Insurance Co.*

*v. Arch Specialty Insurance Co.*, 328 F. App'x 678 (2d Cir. 2009); *Harco National Insurance Co. v. Hammond*, 63 So. 3d 27 (Fla. Dist. Ct. App. 2011).

¶ 36    Hogan's lease undeniably mandated that Justin Time and Haag Food obtain their own liability coverage. It provided, "Such policy will provide that the coverage is primary and not additional or excess coverage over insurance otherwise available to either party ***." The contract also obligated Justin Time and Haag Food to indemnify Hogan for any losses, expenses, and damages due to any claim or cause of action for death, injury, property damage, or economic loss. Justin Time and Haag Food were in complete compliance with these contractual obligations by obtaining the Netherlands policy in the mandated amount. Courts in several states have upheld these contingency provisions. As previously discussed, a federal court in Missouri has upheld this exact contract and insurance policy language and determined that the insurance policy is contingent. Because of the applicability of Missouri law, and the identity of the lease and insurance policy provision, we find the *Cameron Mutual* case to be persuasive. However, before we can reach a decision regarding the trial court's entry of summary judgment, we must consider the ambiguities alleged by the plaintiffs.

¶ 37                    Missing Word or Words at A.1 of Contingent Endorsement

¶ 38    The language labeled as "ambiguous" is contained in the Harco endorsement at A.1:

> "**A. LIABILITY INSURANCE** and any required no-fault, uninsured motorist and underinsured motorist insurance provided by the policy for a covered 'auto' which is a 'leased auto' or 'rented auto' applies subject to the following provisions:
>
>> 1. At the time of an accident the insurance or indemnity as required in the 'lease or rental agreement' is not collectible."

Plaintiffs contend that before the colon at the end of paragraph "A," there must be an additional word. They argue that because that word could possibly be "if" or "unless," which would lead to different interpretations, the clause is ambiguous. The plaintiffs are correct that if we added different words to the end of paragraph "A," the meaning would be different. However, a careful reading of the paragraph negates the argument that an additional word is necessary to complete the paragraph. Paragraph "A" plainly states that its liability coverage for a leased vehicle is "subject to" various provisions. With the "subject to" phrase in paragraph "A," there is simply no need for any additional word. If the reader disregards the "subject to" phrase, then we understand the plaintiffs' contention that the provision would not make sense without the addition of a word.

¶ 39    Courts should not strain to find an ambiguity where none exists. *Abram v. United Services Automobile Ass'n*, 395 Ill. App. 3d 700, 703, 916 N.E.2d 1175, 1179 (2009); *United States Fire Insurance Co.*, 88 Ill. 2d at 5, 429 N.E.2d at 1205. The trial court isolated this part of the contract and simply did not carefully consider the whole of the contract, as required. *Villicana*, 181 Ill. 2d at 442, 692 N.E.2d at 1199.

¶ 40    The first part of Harco's business auto policy provides insurance for vehicles. The incorporated endorsement at issue in this case modifies and limits the coverage provided in the main part of the policy. For a reduced premium–only 1% of the usual rate–the endorsement limits the coverage listed in the main portion of the policy to certain situations. The endorsement provides coverage, but only in those limited situations. The insurance provided

by Justin Time and Haag Food pursuant to their lease with Hogan was collectible, and therefore Harco's policy did not apply. Reading the policy provisions together, we do not find that this particular paragraph is ambiguous.

Paragraph A.4 of Contingent Endorsement

The trial court also found that paragraph A.4 of the contingent endorsement was ambiguous. That provision states as follows:

> "**A. LIABILITY INSURANCE** and any required no-fault, uninsured motorist and underinsured motorist insurance provided by the policy for a covered 'auto' which is a 'leased auto' or 'rented auto' applies subject to the following provisions:
>
> * * *
>
> 4. The insurance provided by this endorsement does not apply if any other insurance is collectible."

The plaintiffs argued to the trial court that because the wording in paragraph "A" referred to insurance "provided by the policy," subparagraph 4's reference to "insurance provided by this endorsement" is confusing. They contend that because there is no insurance provided in the endorsement, subparagraph 4 is ambiguous. Reading paragraph "A" with subparagraph 4, we do not see the ambiguity proposed by the plaintiffs. The insurance applies except in the enumerated situations. Although the word choice in subparagraph 4 refers to insurance provided by the endorsement, we do not believe that the word choice is fatally ambiguous. The endorsement is part of the policy of insurance, and if other insurance is collectible, then the liability policy for a leased vehicle would not take effect. We are reminded that the contract is ambiguous if " 'the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain and ordinary meaning as understood by a reasonable, average person.' " *Cameron Mutual Insurance Co.*, No. 4:07CV01273, at *8 (quoting *Klonoski v. Cardiovascular Consultants of Cape Girardeau, Inc.*, 171 S.W.3d 70, 73 (Mo. Ct. App. 2005)). We find that the plain and ordinary meaning of this provision in the context of the entire agreement only results in one logical construction.

Waiver

The trial court also determined that summary judgment was proper because Harco waived rights to raise provisions contained within the endorsement by not raising them as affirmative defenses in its first responsive pleading. Failure to raise an affirmative defense results in waiver. See *Glasgow Enterprises, Inc. v. Bowers*, 196 S.W.3d 625, 630 (Mo. Ct. App. 2006); *Oakley Fertilizer, Inc. v. Continental Insurance Co.*, 276 S.W.3d 342, 351 (Mo. Ct. App. 2009).

Under Missouri law, courts cannot create insurance coverage by waiver or estoppel. See *Locke Distributing Co. v. Hartford Accident & Indemnity Co.*, 407 S.W.2d 658, 671 (Mo. Ct. App. 1966); *Hussman v. Government Employees Insurance Co. (GEICO)*, 768 S.W.2d 585, 587 (Mo. Ct. App. 1989); *State Farm Mutual Automobile Insurance Co. v. Hartford Accident & Indemnity Co.*, 646 S.W.2d 379, 381 (Mo. Ct. App. 1983). Plaintiffs agree that this is the law.

¶ 46    Plaintiffs attempt to circumvent this law by arguing that the Harco policy provided coverage to Justin Time, Haag Food, and Derell Boyd in a general sense and therefore they are not seeking to "create" insurance coverage by invoking waiver. They claim that Harco's endorsement excluded coverage, and that since the endorsement operated as an exception to the general coverage Harco would have provided plaintiffs, Harco had to raise this endorsement as a defense. Plaintiffs contend that Harco waived its right to raise the endorsement as a bar to coverage.

¶ 47    We do not agree with the waiver argument framed by plaintiffs. As we hold in this opinion, the endorsement clearly bars coverage for this accident. Because there is no applicable coverage, and Missouri law prohibits the creation of coverage by waiver, the arguments advanced by plaintiffs lack merit.

¶ 48    Despite the lack of coverage, we also note that upon review of the briefs and the documents cited by both parties in support of their claims, we find that Harco clearly and repeatedly stated its contention that the endorsement language barred coverage. In response to Indiana's letter to Hogan dated May 4, 2009, directing Hogan to file a claim with Harco, Harco denied coverage on June 6, 2009. In denying coverage, Harco stated that at present there was no claim against Hogan, but that even if there was such a claim, there would be no coverage because of the endorsement language. Justin Time, Haag Food, and Boyd did not seek coverage from Harco–the contact was from the excess insurer, relative to Hogan's liability. On July 2, 2009, Indiana asked Harco for a copy of the insurance policy issued to Hogan, noting that no claim had yet been filed against Hogan. The July 2009 letter from Indiana made no reference to Justin Time, Haag Food, and Boyd. In July 2009, Harco responded to Indiana's request and enclosed a highlighted copy of the contingent coverage endorsement. In September 2009, Indiana again contacted Harco referencing Hogan's potential liability. On September 18, 2009, Harco responded and replied that because of the contingent policy in effect, Harco's policy did not apply. Harco sent another letter to Indiana (confirming a phone conversation) reiterating Harco's contention that its contingent liability policy was in effect. Through October, Harco only received communications from Indiana.

¶ 49    On November 4 and 5, 2009, Harco received its initial communication directly from attorneys representing Justin Time and Haag Food, asking Harco to attend a mediation proceeding. On November 5, 2009, Indiana again contacted Harco and asked for coverage for this loss. On November 6, 2009, Harco wrote to the attorneys for Justin Time and Haag Food, as well as to Indiana, citing to the contingent coverage endorsement and asserting that because of the endorsement language, Harco's policy provided no coverage. While we acknowledge that Harco did not directly correspond or otherwise communicate with Justin Time, Haag Food, and/or Derell Boyd until November 2009, we note that it was in very close contact with one of their insurers, Indiana, since July 2009. Each time Harco communicated with Indiana, Harco stated that there was no coverage and cited to the endorsement language. Until November 2009, there had been no direct request for coverage by Justin Time, Haag Food, and/or Derell Boyd for which a response was required. Given these facts, we find that Harco effectively communicated its position from the inception of contact from parties providing coverage to Justin Time, Haag Food, and Derell Boyd.

¶ 50                              CONCLUSION

¶ 51        For the foregoing reasons, we reverse the judgment of the circuit court of Clinton County and, pursuant to Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), enter judgment in favor of Harco National Insurance Company and award Harco its costs from plaintiffs.

¶ 52        Reversed; judgment entered.